514 P.2d 793

**STATE of Utah, Plaintiff and Respondent,**

v.

**John Lee SCHROFF, Defendant and Appellant.**

No. 13308.

Supreme Court of Utah.

Oct. 3, 1973.

Michael W. Park, Cedar City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., David L. Wilkinson, William T. Evans, Asst. Attys. Gen., Salt Lake City, for plaintiff and respondent.

TUCKETT, Justice:

The defendant was charged in the court below with the violation of Section 58-37-8(1)(a)(i). U.C.A.1953, as amended. The charging part of the information alleges that on or about the 8th day of August, 1972, at Santa Clara, Washington County, Utah, the defendant did cultivate and produce marijuana, a controlled substance. The defendant entered a plea of not guilty, and subsequently a trial was had and the jury returned a verdict of guilty of the offense charged in the information.

On August 5, 1972, one LaVar Brachen discovered that in one of his fields someone was cultivating two small patches of plants which he suspected were marijuana. The sheriff of Washington County was

notified and on the same day the sheriff and Brachen made an examination of the areas. The plants were growing on high ground and were not watered by irrigation of the other farming areas. Depressions had been made adjacent to the plants and the ground surrounding the plants was moist. Buckets and jugs were found near a creek which was a short distance from the areas above mentioned. Footprints led from the areas to the creek. Thereafter the sheriff and his men placed the areas under surveillance. On or about the 7th day of August, the defendant was observed crossing one of the fields near the areas where the marijuana was growing. On August 8th, the defendant was observed picking leaves from one of the plants and placing it in a plastic bread wrapper sack. The sheriff placed the defendant under arrest and charged him with the offense we are here concerned with. The sheriff testified that after the defendant was in custody he made a statement in substantially the following language: "Why didn't we go catch some of these junkies that were peddling dope and leave us with our marijuana alone?"

It is the defendant's contention here that the evidence is insufficient to support the charge against him that he did cultivate and produce marijuana. With this contention we must agree. The evidence taken as whole would only support a charge that the defendant was in possession of marijuana. Possession alone is insufficient to show that the defendant cultivated or produced the substance. We conclude that the defendant's conviction must be reversed and it is ordered that the information be dismissed.

CALLISTER, C. J., concurs.

HENRIOD, Justice (concurring):

I concur, believing the State did not prove its charge beyond a reasonable doubt, that defendant did "cultivate *and* produce" marijuana. "Cultivate" seems to be surplusage and not in the statute.[1] One cannot tell whether the jury thought defendant "cultivated" or "produced" or "cultivated *and* produced." Assuming it thought defendant "produced" the plant, there is no evidence that he did. Assuming it thought he simply "cultivated" the plant, there is no such offense. Assuming it thought he both "cultivated and produced" the plant, he is not guilty for several reasons: 1) The information is in the conjunctive, and not severable, and defendant should not be convicted of something not in the statute; 2) there is no evidence defendant "produced" the marijuana, and none about his "cultivating" it,—albeit had there been he would not have been guilty

---

1. 58-37-8(1)(a)(i), U.C.A.1953, as amended, which says it is unlawful to "Produce, manufacture or dispense . . . ."

of a statutory offense; 3) the facts recited in the dissent do not show culpability, except if we take gratuitous facts added but not found in the record nor in the opinion, when it says, after remarking that *somebody* was certainly cultivating the plants (see footnote), that "They were his plants" and that "he was giving them his attention."

It is submitted that there are numerous hypotheses indulgable in this case just as consistent with innocence as guilt. An instruction as to this principle should have and perhaps was in substance given, which, if not adhered to by the jury would have resulted in reversible error on conviction. However, in this case, the jury did not have, by way of inference, any alternative but to conclude that the whole backbone of this case was broken perforce by legal undernourishment.

To the contention made in the dissent that the "concurring opinion seems to be unduly technical" because 1) it raises matters not claimed as error on this appeal and *never questioned in the trial court"* and 2) that anyway "cultivate" and "produce" are synonymous terms:

As to 1): The record reveals the following:

MR. PARK: At this time the state has rested, the defendant moves the court to dismiss this cause as to cultivation and production for the cause and reason that there hasn't been shown any cultivation or production . . . ..

THE COURT: . . . it is true the state of Utah[2] does not use the word cultivation. The court hasn't instructed the jury on the proposed instructions *or prepared* any instructions with respect to cultivation . . . .. The court is going to take the motion under advisement . . . ..

And again, counsel for defendant, at the time the parties had rested and were given their opportunities to make exceptions, *made the following exception*:

MR. PARK: The defendant hereby objects to Instruction No. 13[3] for the cause and reason that the instruction is inconsistent with the information as it states that the defendant must only knowingly and intentionally *produce* a controlled substance; said instruction should state that the defendant should knowingly and intentionally *cultivate and produce* a controlled substance.

I recognize that the defendant did not claim error on appeal as a specific "Point

---

2. It seems obvious that the trial judge was referring to the statute which does not say "cultivation" is part of the offense.

3. "You are instructed that . . . it is unlawful and a felony for any person know-

ingly to *produce* a controlled substance, in this case marijuana." (Significantly, the word "cultivate" is left out of the instruction but appears in the information's charge of the offense.)

on Appeal," but this case being a criminal case of felony magnitude, involving a possible prison sentence and record, I think defendant's statement in his brief that "The transcript is devoid of any evidence connecting the defendant with tilling of the soil, planting, watering or fertilizing any marijuana plants," should be considered as at least an unorthodox but nonetheless intended effort to apprise this court of a matter prejudicial in one degree or another to his interest, based on the differential between improper accusation and any attempt to correct it by a so-called curative instruction.

As to 2) above, a rather strange development appears to have taken place with respect to the meaning of the word "cultivate." Mr. Justice Ellett is quite right that Webster's International Dictionary, Second Edition, published in 1945, has as one of its definitions of "cultivate" the words "to produce by culture." [4] Since that time Mr. Webster has had a change of heart and in his Third Edition, published in 1959, the definition quoted by Mr. Justice Ellett does not appear. This author ventures the suggestion that the phrase was deleted because it was quite irreconcilable with the other supposedly synonymous definitions of "cultivate" as to have caught the lexicographer's eye. For instance, one of the word's definitions in both editions is "to loosen or break up the soil about (growing crops or plants) for the purpose of killing weeds." Marijuana generally has been tagged as a "weed," so that by the latter definition the charge in the information would have to have been that defendant was "*Killing* Weeds and *Producing* Plants" which has no semblance of synonymity as suggested by Mr. Justice Ellett. At any rate, Webster saw fit to correct an abortion of the word, and all we of the majority seek to do is to correct a miscarriage of the charge, and the interment of a highly confusing accusatory procedure, whose memory otherwise might live for quite a spell behind bars after a conviction born of error by the state.

For the dissent to say that any error committed here was harmless in view of the instruction given,—which actually compounded the initial error,—seems to be a conclusion found only in the eyes of the beholder, and not in the statute, nor in the charge found in the eager information, nor in the inadequacy of the instruction, nor in the minds of the veniremen, whose verdict was "we find the defendant GUILTY of the felony of 'Producing *and Cultivating* Marijuana' *as charged* in the Information on file herein," nor in the main opinion, nor, frankly, this author believes, in any sufficiency of evidence if presented to a jury under proper charge and proper instructions.

4.  Arguendo, it is assumed that "culture" was related to "cultivate."

ELLETT, Justice (dissenting):

I dissent. I could have based my dissent on the facts as stated in the main opinion, but I do not do so, for there is more to be said about the matter.

The defendant neither testified nor produced any evidence at trial, and, therefore, the evidence on behalf of the State is uncontradicted. That evidence showed that a trail led up a steep, sandy bank from a creek to some willow brush on top. Some of the brush had been cut away so that the sun could shine on seven or eight marijuana plants. The land was owned by a stranger to the defendant, and the owner had given no one authority to grow marijuana or any other plants on his land. There were several five-gallon cans beside the creek apparently used to carry water up the trail to the plants. Each plant was growing in an artificially-made depression in the ground which was wet when the owner of the land discovered them.

The sheriff of the county was called, and he and the owner went to the hidden patch of marijuana and observed the situation. Later the sheriff and some of his deputies returned to the scene and observed that someone had watered the plants during the sheriff's absence. The next day the sheriff and his men kept watch from a hiding place, and about two o'clock that afternoon they saw the defendant upon the land of the owner. However, he did not approach the marijuana plants but disappeared into the brush at another place. After a while, the officers left their hiding place and followed the trail of the defendant. There in the brush was another patch of some 25 or 30 marijuana plants growing in small, artificially-made depressions, all of which had recently been watered. There were some vessels in a ditch nearby which were suitable for carrying water from the ditch to the plants.

No one approached either patch of plants the next day. However, on the following day the hidden officers observed the defendant stooped over in the larger patch. They approached within a few feet and observed him picking marijuana leaves and placing them in a plastic bag.

The sheriff arrested the defendant, gave him the Miranda warning, and without any questions being directed to him the defendant asked the sheriff why he "didn't go pick up some of these junkies peddling hard stuff and leave us alone with our marijuana."

The defendant had a pair of field glasses nearby but had parked his truck some distance away, all being circumstances for the jury to consider.

If the marijuana was his, as he claimed it to be, and he was the only one seen near the plants, and he went there at least two times in three days, and the plants were watered after each of his appearances, I cannot understand how it can be said that the evidence fails to sustain his conviction

of producing and cultivating the plants. Somebody was certainly cultivating them. They were his plants. He was giving them his attention, and the only reasonable inference to be drawn from the evidence is that it was he who planted, cultivated and produced them secretly.

The jury, as the trier of the facts, found the defendant guilty beyond a reasonable doubt of producing and cultivating marijuana. The jurors were entitled to weigh the evidence and to draw therefrom all inferences which could reasonably be made. In this matter they were well within their prerogatives in finding as they did, and this court ought not arbitrarily to say that the evidence failed to sustain their verdict.

The concurring opinion seems to me to be unduly technical. It raises matters not claimed as error on this appeal and never questioned in the trial court, and this court should not reverse a case on points never claimed by an appellant except where great injustice would otherwise result. The law is set out in 24 C.J.S. Criminal Law § 1693(2) as follows:

It is a general rule that errors or questions not brought to the attention of the lower court in a motion for a new trial cannot, or will not, be reviewed by an appellate court, the view being taken that such errors or questions are to be regarded as having been waived by appellant . . . ..

The reason why defendant and his counsel never raised the matter would seem obvious: The terms "to cultivate" and "to produce" in the sense used are synonymous terms. Webster's New International Dictionary (Second Edition) defines "cultivate" as follows: ". . . to produce by culture." It further defines "produce" as follows: "2.a. To bring forth, as young, or as a natural product or growth; . . . ."

Even if the defendant had objected to the charge, as the concurring opinion does for him, it would avail him nothing on this appeal for the reason that, assuming error, it is harmless in view of the instructions given to the jury. The jury was specifically instructed:

Instruction No. 15

You are instructed that before you can find the defendant guilty of "Producing and Cultivating Marijuana" you must find and believe from the evidence and beyond a reasonable doubt the following:

\*   \*   \*   \*   \*   \*

3. That the defendant, John Lee Schroff, did, on said date and at said place, knowingly and intentionally produce a controlled substance, to-wit: Marijuana.

\*   \*   \*   \*   \*   \*

No exceptions were taken to any of the instructions, and no claim is now made that they were erroneous in any particular.

The jurors by following the instructions had to find that the defendant did *produce* marijuana, otherwise they could not have found him guilty.

By its instruction the court eliminated any thought that there might be a difference between cultivating marijuana and producing it.

Even if it be thought that the crime was not sufficiently set forth under the above statement, a reading of the section of our statute which directs how a crime may be charged will put the matter beyond doubt. Section 77–21–8, U.C.A.1953, reads as follows:

(1) The information or indictment may charge, and is valid and sufficient if it charges the offense for which the defendant is being prosecuted in one or more of the following ways:

(a) By using the name given to the offense by the common law or by a statute.

(b) By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged.

(2) The information or indictment may refer to a section or subsection of any statute creating the offense charged therein, and in determining the validity or sufficiency of such information or indictment regard shall be had to such reference.

I would affirm the judgment of the trial court.

CROCKETT, J., concurs in the views expressed in the dissenting opinion of ELLETT, J.